UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JEREMIAH ADZOGBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-04237-SLD-JEH |
| ) | |
| TYSON FRESH MEATS, INC., ) | |
| ) | |
| Defendant. ) | |

ORDER

The Court previously granted Defendant Tyson Fresh Meats, Inc.'s Motion for Summary Judgment, ECF No. 41, as to Plaintiff Jeremiah Adzogble's failure to accommodate and retaliation claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–213, and his claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54.  *See* June 12, 2023 Order 25, ECF No. 48.  Upon its own recommendation, the Court now considers whether to grant summary judgment in Defendant's favor on Plaintiff's ADA disparate treatment claim.  The Court finds that Defendant is entitled to summary judgment on this claim.

**BACKGROUND**[1]

**I.  Defendant's Operations**

Defendant produces and supplies beef and pork products to retail grocers, foodservice distributors, and restaurants around the world.  It operates several facilities, including a beef

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Unless otherwise noted, the factual background of this case is drawn from Defendant's statement of undisputed material facts in its motion for summary judgment, Def.'s Mem. Supp. Mot. Summ. J. 2–11, ECF No. 42; Plaintiff's statement of disputed material facts and additional material facts in his response to the motion for summary judgment, Pl.'s Mem. Supp. Resp. Mot. Summ. J. 1–5, ECF No. 45-1; Defendant's reply to these additional material facts, Def.'s Reply 2–7, ECF No. 46; and exhibits to the filings.  In the supplemental briefing, the parties largely refer to their earlier filings, *see* Suppl. Br. 1, ECF No. 49; Resp. Suppl. Br. 1, ECF No. 50, but Plaintiff provides additional exhibits from which the Court also draws facts.  A more detailed factual background section appears in the Court's June 12, 2023 Order.  *See* June 12, 2023 Order 1–6.

1

facility located in Joslin, Illinois that employs approximately 2,400 employees. Defendant has in place written policies that prohibit employment discrimination, harassment, and retaliation against its employees, as well as a policy regarding accommodations under the ADA. It also offers a Leave of Absence Policy ("LOA Policy"), which provides that an employee may take an unpaid leave of absence of up to twelve months for personal reasons, even if the leave of absence is not protected under the FMLA. Under this policy, an employee may be terminated if he does not return to work at the end of the approved leave of absence.

## II.   Plaintiff's Employment History

Defendant hired Plaintiff to work at the Joslin facility in February 2012; he performed a variety of roles there. In 2016, Plaintiff, who had previously been diagnosed with glaucoma and whose vision continued to deteriorate, became legally blind. In June 2017, he was assigned the role of Hang Paper on Brisket, in which he was tasked with placing sheets of paper on cow carcasses to prevent them from being exposed to potential airborne contaminants as they moved along the production line, because his vision had deteriorated to the point that it was one of the few roles he could safely perform.

Plaintiff continued to perform the Hang Paper on Brisket role for over a year while keeping Defendant apprised of the progression of his glaucoma and his doctors' recommendations. On May 17, 2018, for example, one of Plaintiff's eye doctors wrote a note reiterating that Plaintiff was legally blind due to very severe glaucoma and stating that the Hang Paper on Brisket role was still suitable for him. *See* May 17, 2018 Doctor's Note, Myrtue Aff. Ex. 7, ECF No. 43-2 at 38.

On or around October 30, 2018, Plaintiff met with Defendant's Human Resources Manager Amy Myrtue and informed her that he no longer wished to perform the Hang Paper on

Brisket job. Defendant placed Plaintiff on an unpaid leave of absence, effective October 30, 2018. Myrtue provided Plaintiff with FMLA forms in case he wished to have his leave designated as FMLA-protected leave; Plaintiff did not complete or return the forms. As a result, Defendant treated Plaintiff's leave as an unpaid, non-FMLA-protected leave under Defendant's LOA Policy.

Myrtue remained in contact with Plaintiff. In November 2018, Defendant re-offered the Hang Paper on Brisket job to Plaintiff on a temporary basis to give him time to consider whether he wished to return permanently to that job or to engage in discussions with Defendant as to other jobs at the Joslin facility he might be able to perform. Plaintiff declined the offer, "choos[ing] to stay off work at [his] own discretion." Declination of Temporary Duty Assignment, Myrtue Aff. Ex. 10, ECF No. 43-2 at 44.

On October 30, 2019, one full year from when Plaintiff's unpaid leave of absence under the LOA Policy began, Myrtue sent Plaintiff a letter stating that his leave had expired and that if he did not contact Defendant by November 13, 2019, it would terminate his employment. Plaintiff did not respond, and his employment was terminated effective December 9, 2019.

### III.   Social Security Benefits

In December 2018, Plaintiff applied for social security disability benefits. In his application, Plaintiff identified the start date of his disability as October 30, 2018 and indicated that he was not currently able to work. Plaintiff was ultimately granted social security disability benefits.

### IV.   Procedural History

Plaintiff received a right to sue notice from the Equal Employment Opportunity Commission on September 8, 2020. *See* Dismissal and Notice of Rights, ECF No. 1-3.

Proceeding *pro se*, Plaintiff initiated this suit on November 16, 2020, Compl., ECF No. 1, and filed an amended complaint on October 26, 2021, Am. Compl., ECF No. 10. He brought claims under the ADA and the FMLA and alleged that Defendant failed to reasonably accommodate him, retaliated against him for seeking accommodations, and discriminated against him on the basis of his disability by terminating him. *See id*. at 2–3. Defendant filed a motion for summary judgment as to Plaintiff's failure to accommodate and retaliation claims under the ADA and his FMLA claims, Def.'s Mem. Supp. Mot. Summ. J. 1–2, 12–21, ECF No. 42, which the Court granted, June 12, 2023 Order 25. The Court acknowledged that Defendant had failed to address Plaintiff's ADA disparate treatment claim in its motion but suggested that, based on the evidence before it, Defendant could also be entitled to summary judgment on that claim. *Id*. at 23–24. It notified the parties that it was inclined to enter summary judgment in Defendant's favor on the disparate treatment claim pursuant to Federal Rule of Civil Procedure 56(f) and permitted the parties to file supplemental briefs on the issue. *Id*. at 24–25. Defendant filed a supplemental brief on June 19, 2023, *see* Suppl. Br., ECF No. 49, to which Plaintiff responded on July 6, 2023, *see* Resp. Suppl. Br., ECF No. 50, and Defendant filed a reply on July 20, 2023, *see* Reply Suppl. Br., ECF No. 51.

## DISCUSSION

### I. Legal Standard

Summary judgment is warranted when there is no genuine dispute as to any material fact and the party in whose favor summary judgment is contemplated is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must construe the record in the light most favorable to the party against whom summary judgment is considered, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in

favor of [that party]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).  However, that party "is not entitled to the benefit of inferences that are supported by only speculation or conjecture."  *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).  A court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," but it must give the parties notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f)(3).

**II.    Analysis**

Plaintiff alleges that Defendant discriminated against him on the basis of his disability by terminating him.  Am. Compl. 3, 4.  To prevail on an ADA disparate treatment claim, a plaintiff must show "(1) that the plaintiff is disabled within the meaning of the ADA; (2) that the plaintiff is qualified to perform the essential functions of the job with or without accommodation; and (3) that the plaintiff has suffered an adverse employment action because of his disability."  *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).  Defendant contends that Plaintiff cannot prevail as to either the second or third elements and that it is, therefore, entitled to summary judgment.  Suppl. Br. 1, 2.

**A.   Qualified to Perform Essential Job Functions**

Defendant asserts that Plaintiff cannot show that he was qualified to perform the essential functions of his job at the time of his termination because he represented to the Social Security Administration that he was totally disabled.  Suppl. Br. 2.  As the Court discussed in greater detail previously, *see* June 12, 2023 Order 12–13, claims under the ADA and the receipt of social security disability benefits are not mutually exclusive, nor is there even a "strong presumption against the [social security] recipient's success under the ADA," *see Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 797–98 (1999).  However, with regard to whether an individual is

5

qualified under the ADA, that individual "cannot simply ignore her . . . contention [before the Social Security Administration] that she was too disabled to work." *Id*. at 798.  Rather, "[t]o survive a defendant's motion for summary judgment, she must explain why that . . . contention is consistent with her ADA claim that she could 'perform the essential functions'" of her job with or without reasonable accommodation. *Id*.

It is undisputed that Plaintiff applied for social security disability benefits in December 2018, identifying the start date of his disability as October 30, 2018 and affirming that he was not able to work after that date. *See* Social Security Application 8, 10, 12, Moeller Aff. Ex. 4, ECF No. 43-3 at 19–23; *see also Johnson v. Green Auto. Ltd*., No. 15-cv-3198, 2018 WL 11009415, at *3 (C.D. Ill. Feb. 13, 2018) (noting that "when [the plaintiff] applied for benefits, he necessarily alleged to the Social Security Administration that he could not engage in any substantial gainful activity as of" the alleged disability onset date).  He was ultimately granted benefits.  *See* Social Security Benefit Statements 1–3, Moeller Aff. Ex. 1, ECF No. 43-3 at 5–7. But Plaintiff asserts that he was able to work with accommodations after October 30, 2018.  *See, e.g*., Pl.'s Mem. Supp. Resp. Mot. Summ. J. 3, 8, ECF No. 45-1; Resp. Suppl. Br. 2.  Thus, for his disparate treatment claim to survive summary judgment, he must provide an explanation for the discrepancy between his statement in his social security application that he could not work and his ADA claim.  He has failed to do so.[2]  As such, he was not a qualified individual for purposes of the ADA after his alleged disability onset date of October 30, 2018, which means he was not a qualified individual at the time of his December 9, 2019 termination.

---

[2] In his response to Defendant's supplemental brief, Plaintiff states that he applied for social security benefits because he "d[idn't] know how [he] w[ould] live and go to see doctors for his disabilities treatment without income," asserts that his benefits are "based on [o]nly [o]ne [d]isability" as opposed to a combination of his blindness and certain knee injuries he alleges resulted from his work, and reiterates that he could work with reasonable accommodations.  *See* Resp. Suppl. Br. 3–4.  This does not explain how his receipt of social security benefits is consistent with his claim under the ADA that he could continue to work.

### B. Terminated Because of Disability

In the alternative, Defendant argues that even if Plaintiff were a qualified individual with a disability, he cannot show that he was terminated because of his disability. Suppl. Br. 3–4. When evaluating this issue at the summary judgment stage, a court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . [disability] caused the . . . adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).[3] Direct evidence of disability discrimination is rare. *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018). Instead, plaintiffs typically demonstrate discrimination with circumstantial evidence. *Id*. This may include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Monroe v. Ind. Dep't of Transp*., 871 F.3d 495, 504 (7th Cir. 2017) (quotation marks omitted). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." *Ortiz*, 834 F.3d at 765. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

One method a plaintiff may use for "organizing, presenting, and assessing circumstantial evidence" in discrimination cases is the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which

---

[3] "[I]n analyzing claims under the ADA, it is appropriate to borrow" from cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17, because the statutes are similar. *See Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996).

>the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer.

*David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224–25 (7th Cir. 2017) (alteration in original) (quotation marks omitted). The burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* at 225.

Defendant contends that it is entitled to summary judgment on the disparate treatment claim, arguing that Plaintiff has neither satisfied his burden of establishing a *prima facie* case under the *McDonnell Douglas* framework nor shown that there is sufficient evidence in the record as a whole to demonstrate discrimination. *See* Suppl. Br. 2 n.1, 3–4. The Court will first examine whether Plaintiff has satisfied his burden under the *McDonnell Douglas* framework.

### i. *McDonnell Douglas* Burden-Shifting Framework

The parties do not dispute that Plaintiff is a member of a protected class due to his disability and that he was subjected to an adverse employment action when he was terminated. To fulfill his initial burden, Plaintiff must also show that he was meeting Defendant's legitimate expectations at the time he was terminated and that Defendant treated similarly situated employees who were not disabled more favorably. *See David*, 846 F.3d at 225.

In assessing whether an employee was meeting an employer's legitimate expectations, "the inquiry must focus on [the employee's] performance at the time of his dismissal." *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 676 (7th Cir. 2006). It is undisputed that Plaintiff had been on an unpaid leave of absence for over a year at the time he was terminated, *see* Myrtue

Aff. ¶ 29, ECF No. 43-2 at 2–8; Oct. 30, 2019 Letter, Myrtue Aff. Ex. 12, ECF No. 43-2 at 48, and that Defendant's policy provides for a maximum leave of absence of one year, LOA Policy § 3.1.2, Myrtue Aff. Ex. 4, ECF No. 43-2 at 24–28. It is also undisputed that Plaintiff took no action in response to the letter he received notifying him that his leave had expired. *See* Myrtue Aff. ¶ 30. Because Plaintiff was in violation of Defendant's policy, he cannot be said to have been meeting Defendant's legitimate expectations of showing up to work. *Cf. Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 669 (N.D. Ill. 2016) (finding that an employee had not shown he was meeting his employer's legitimate expectations where he violated several of his employer's policies).

Additionally, Plaintiff has failed to show that similarly situated non-disabled employees were treated differently than he was. "[W]hether employees are similarly situated is a flexible, common-sense, and factual inquiry." *David*, 846 F.3d at 225 (quotation marks omitted). The court should consider such factors as "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Id*. at 226 (quotation marks omitted). If sufficient information is not provided, the court cannot find employees to be comparable. *See Anders*, 463 F.3d at 676–77. The burden of establishing that an employee was similarly situated—through citations to evidence—belongs to Plaintiff. *See David*, 846 F.3d at 225.

Plaintiff has not identified any suitable comparators. He points to a letter he provided from "a non-disabled employee who was in light duty and got better treatment than [him]," Resp. Suppl. Br. 3, but the letter does not show that this non-disabled employee ever took a leave of

9

absence, Houndjo Letter, Resp. Suppl. Br. Ex. 18, ECF No. 50-1 at 91.[4]  Myrtue attests that between January 1, 2019 and February 15, 2023, the Joslin facility terminated the employment of 232 employees under Defendant's LOA policy for failing to return to work after their leaves of absence expired.  Myrtue Aff. ¶ 31.  And Plaintiff provides a list of names identifying ten employees who were terminated for overextending their leaves of absence in 2019 and 2020, of whom Plaintiff was the only employee "on a purported disability-related leave of absence."  *See* Interrogatory Answer, Pl.'s Resp. Mot. Summ. J. Ex. 10, ECF No. 45-3 at 10.  But none of this evidence, nor any evidence in the rest of the record, points to any non-disabled employee who was not terminated for overextending his or her leave of absence under the LOA Policy.

As such, Plaintiff has not satisfied his burden to establish a *prima facie* case of disability discrimination based on his termination.

### ii. Evidence as a Whole

Looking to the evidence as a whole, the Court does not find that a reasonable factfinder could conclude that Plaintiff was terminated because of his disability.  *See Ortiz*, 834 F.3d at 765.  It is undisputed that Plaintiff was placed on a one-year unpaid leave of absence pursuant to Defendant's LOA Policy effective October 30, 2018, Myrtue Aff. ¶¶ 20, 21, that he was warned on October 30, 2019 that his leave had come to an end and he would be terminated if he did not contact Defendant within a certain period of time, Oct. 30, 2019 Letter, and that he did not contact Defendant and was accordingly terminated, Myrtue Aff. ¶ 30.  And Defendant offered the Hang Paper on Brisket job to Plaintiff even after he had begun his unpaid leave, Myrtue Aff. ¶ 23; Declination of Temporary Duty Assignment, and reasonably accommodated him in that position, *see* June 12, 2023 Order 20.

---

[4] Nor is it possible to discern from the letter whether the non-disabled employee was otherwise similarly situated to Plaintiff.

10

While Plaintiff testified at his deposition that he "believe[d] that [Defendant] terminated [his] employment because [he was] disabled" and "believe[d] that if [he] weren't disabled, [Defendant] would not have terminated [his] employment," Adzogble Dep. 70:6–13, ECF No. 43-1, this is not sufficient: "[a] subjective belief of discrimination no matter how genuine, cannot be the sole basis for a finding of discrimination," *Kizer v. Child.'s Learning Ctr.*, 962 F.2d 608, 613 (7th Cir. 1992) (quotation marks omitted). There is nothing in the record otherwise indicating that Plaintiff's disability—as opposed to his overextension of his leave of absence—caused his termination.

The Court finds that Plaintiff has failed to show that a reasonable jury could conclude that Defendant discriminated against him on the basis of his disability by terminating him. *See Ortiz*, 834 F.3d at 765. Summary judgment is accordingly granted in Defendant's favor on the disparate treatment claim.[5]

## CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in Defendant Tyson Fresh Meats, Inc.'s favor on the disparate treatment claim. As none of the claims in the complaint remain, the Clerk is directed to enter judgment and close the case.

Entered this 29th day of August, 2023.

                        s/ Sara Darrow
                        SARA DARROW
                        CHIEF UNITED STATES DISTRICT JUDGE

---

[5] To the extent that Plaintiff intends to argue that Defendant's placing him on a leave of absence under its LOA policy was itself disability discrimination, the Court disagrees. First, Plaintiff's leave began on October 30, 2018, *see* Myrtue Aff. ¶ 20, the date as of which he was no longer a qualified individual under the ADA, *see supra* Section II(A); June 12, 2023 Order 13. Second, no reasonable jury could conclude that Plaintiff was placed on the leave of absence because of his disability rather than because he stated that he no longer wished to perform the Hang Paper on Brisket job, a job in which the Court already found he was reasonably accommodated. *See* Myrtue Aff. ¶¶ 19–20; June 12, 2023 Order 14–20.